**HALPER SADEH LLP**
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELDON ROMANIUK, <br><br> Plaintiff, <br><br> v. <br><br> CAESARS ENTERTAINMENT CORPORATION, JAMES HUNT, ANTHONY RODIO, THOMAS BENNINGER, JULIANA L. CHUGG, DENISE CLARK, KEITH COZZA, JOHN DIONNE, DON KORNSTEIN, COURTNEY MATHER, JAMES L. NELSON, and RICHARD SCHIFTER, <br><br> Defendants. | Case No: <br><br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Eldon Romaniuk ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1. This is an action against Caesars Entertainment Corporation ("Caesars" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Caesars by Eldorado Resorts, Inc. ("Eldorado").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District and/or Defendants conduct substantial business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Caesars common stock.

7. Defendant Caesars, through its subsidiaries, provides casino-entertainment and hospitality services in the United States and internationally. Caesars is incorporated in Delaware

and operates casino properties in Atlantic City, New Jersey. Caesars' common stock trades on the NASDAQ Global Select Market under the ticker symbol, "CZR."

8. Defendant James Hunt ("Hunt") is the Chairman of the Board of Caesars.

9. Defendant Anthony Rodio ("Rodio") is the Chief Executive Officer and a director of Caesars.

10. Defendant Thomas Benninger ("Benninger") is a director of Caesars.

11. Defendant Juliana L. Chugg ("Chugg") is a director of Caesars.

12. Defendant Denise Clark ("Clark") is a director of Caesars.

13. Defendant Keith Cozza ("Cozza") is a director of Caesars.

14. Defendant John Dionne ("Dionne") is a director of Caesars.

15. Defendant Don Kornstein ("Kornstein") is a director of Caesars.

16. Defendant Courtney Mather ("Mather") is a director of Caesars.

17. Defendant James L. Nelson ("Nelson) is a director of Caesars.

18. Defendant Richard Schifter ("Schifter") was a director of Caesars from May 2017 until September 5, 2019.

19. Defendants Hunt, Rodio, Benninger, Chugg, Clark, Cozza, Dionne, Kornstein, Mather, Nelson, and Schifter are collectively referred to herein as the "Individual Defendants."

20. Defendants Caesars and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company

21. Caesars is a casino-entertainment and hospitality services provider. It began operations in 1937, and has expanded its facilities to include gaming offerings, food and beverage

outlets, hotel and convention space, and non-gaming entertainment options.

22.     As of December 31, 2018, Caesars had 53 properties in 14 U.S. states, as well as in five countries outside of the U.S. These properties include those operated under the Harrah's, Caesars, Bally's, and Horsehoe brand names.

23.     Caesars' facilities have an aggregate of over 3 million square feet of gaming space and approximately 40,000 hotel rooms.  Caesars' casino operations include thousands of slot machines and table games, as well as other games such as keno, poker, and race and sports books. Caesars currently has gaming licenses in New Jersey, Missouri, Mississippi, Nevada, Kentucky, Illinois, Indiana, Pennsylvania, Iowa, and Louisiana.

**B. The Proposed Transaction**

24.     On June 24, 2019, Caesars and Eldorado issued a press release announcing that they had entered into a merger agreement whereby Eldorado would acquire all of the outstanding shares of Caesars for a total value of $12.75 per share, consisting of $8.40 per share in cash and 0.0899 shares of Eldorado common stock for each Caesars share of common stock based on Eldorado's 30-calendar day volume weighted average price per share as of May 23, 2019. According to the press release, upon consummation of the Proposed Transaction, Eldorado and Caesars shareholders would hold approximately 51% and 49% of the combined company's outstanding shares, respectively. The press release states, in pertinent part:

**Eldorado to Combine With Caesars Creating the Largest Owner and Operator of U.S. Gaming Assets**

- *COMBINES ICONIC GLOBAL BRANDS AND INDUSTRY-LEADING LOYALTY PROGRAM WITH EXCEPTIONAL GUEST SERVICES AND OPERATIONAL EXCELLENCE*
- *INCREASED SCALE AND GEOGRAPHIC DIVERSIFICATION ACROSS APPROXIMATELY 60 DOMESTIC GAMING PROPERTIES*
- *IDENTIFIED SYNERGIES OF $500 MILLION WITH LONGER-TERM UPSIDE*

- *$3.2 BILLION STRATEGIC TRANSACTION WITH VICI PROVIDES SIGNIFICANT PROCEEDS FROM LEASE MODIFICATIONS AND REAL ESTATE MONETIZATION*
- *EXPECTED TO BE IMMEDIATELY ACCRETIVE TO FREE CASH FLOW*
- *CONTINUED OWNERSHIP OF REAL ESTATE ACROSS BOTH PORTFOLIOS PRESERVES INHERENT VALUE*
- *ELDORADO'S CHAIRMAN GARY CARANO, CEO TOM REEG, COO, CFO AND CLO WILL LEAD THE COMBINED COMPANY, WHICH WILL USE THE CAESARS NAME*
- *COMPANY TO BE HEADQUARTERED IN RENO, NEVADA AND WILL RETAIN SIGNIFICANT CORPORATE PRESENCE IN LAS VEGAS*

June 24, 2019 06:00 AM Eastern Daylight Time

RENO, Nev. & LAS VEGAS--(BUSINESS WIRE)--Eldorado Resorts, Inc. (NASDAQ: ERI) ("Eldorado," "ERI," or "the Company") and Caesars Entertainment Corporation (NASDAQ: CZR) ("Caesars") announced that they have entered into a definitive merger agreement to create the largest U.S. gaming company. The proposed transaction will combine two leading gaming companies with complementary national operating platforms, strong brands, strategic industry alliances, and a collective commitment to enhancing guest service and shareholder value. The combined company will provide its guests with access to approximately 60 domestic casino–resorts and gaming facilities across 16 states. The transaction is transformational for each company's shareholders, employees and customers, combining Eldorado's operational expertise with Caesars industry-leading loyalty program, regional network and Las Vegas assets.

**Summary of Caesars Transaction**

Eldorado will acquire all of the outstanding shares of Caesars for a total value of $12.75 per share, consisting of $8.40 per share in cash consideration and 0.0899 shares of Eldorado common stock for each Caesars share of common stock based on Eldorado's 30-calendar day volume weighted average price per share as of May 23, 2019, reflecting total consideration of approximately $17.3 billion, comprised of $7.2 billion in cash, approximately 77 million Eldorado common shares and the assumption of Caesars outstanding net debt (excluding face value of the existing convertible note). Caesars shareholders will be offered a consideration election mechanism that is subject to proration pursuant to the definitive merger agreement. Giving effect to the transaction, Eldorado and Caesars shareholders will hold approximately 51% and 49% of the combined company's outstanding shares, respectively.

Upon completion of the transaction the combined company will retain the Caesars name to capitalize on the value of the iconic global brand and its legacy of leadership in the global gaming industry. The new company will continue to trade on the Nasdaq Global Select Market.

\* \* \*

**Governance and Timing**

- The combined company's Board of Directors will consist of 11 members, six of whom will come from Eldorado's Board of Directors and five of whom will come from Caesars Board of Directors

- The transactions have been unanimously approved by the Boards of Directors of Eldorado, Caesars and VICI. The Caesars transaction is subject to approval of the stockholders of Eldorado and Caesars, the approval of applicable gaming authorities, the expiration of the applicable Hart-Scott-Rodino waiting period and other customary closing conditions, and is expected to be consummated in the first half of 2020

**Advisors**

J.P. Morgan, Credit Suisse and Macquarie Capital are serving as financial advisors to Eldorado. Milbank LLP and Latham & Watkins LLP are serving as Eldorado's legal counsel. PJT Partners LP is serving as financial advisor to Caesars. Skadden, Arps, Slate, Meagher & Flom LLP is serving as Caesars legal counsel.

\* \* \*

**About Caesars**

Caesars is the world's most geographically diversified casino-entertainment company. Since its beginning in Reno, Nevada, in 1937, Caesars has grown through development of new resorts, expansions and acquisitions, and now operates casinos on three continents. The company's resorts operate primarily under the Harrah's®, Caesars® and Horseshoe® brand names. Caesars also owns the London Clubs International family of casinos. Caesars currently owns and operates 34 casinos and resorts in Kentucky, Illinois, Indiana, Iowa, Louisiana, Mississippi, Missouri, Nevada and New Jersey. Domestically, Caesars properties feature approximately 48,000 slot machines and VLTs and approximately 3,000 table games, and over 39,000 hotel rooms. The company is based in Las Vegas, Nevada. To learn more about Caesars, please visit www.caesars.com.

25.     On September 3, 2019, in connection with the Proposed Transaction, Defendants authorized or caused the dissemination of a joint Registration Statement on Form S-4 with the SEC (the "Registration Statement").

### C. The Registration Statement Contains Materially False and Misleading Statements and Omissions

26. The Registration Statement, which recommends that Caesars shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Caesars' and Eldorado's financial projections; (ii) the financial analyses performed by Caesars' financial advisor, PJT Partners LP ("PJT"), in connection with its fairness opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving PJT.

27. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Caesars Board's Reasons for the Merger and Recommendation of the Caesars Board; (iii) Certain ERI and Caesars Financial Projections; and (iv) Opinion of Caesars' Financial Advisor.

28. Unless and until the material misstatements and omissions (referenced below) are remedied, Caesars shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Caesars' and Eldorado's Financial Projections

29. The Registration Statement omits material information concerning Caesars' and Eldorado's financial projections.

30. The Registration Statement states that Eldorado prepared "certain unaudited internal financial forecasts" concerning Eldorado that were provided to Caesars' Board and Caesars' financial advisor.

7

31.     With respect to the "*[Eldorado] Projections Regarding [Eldorado]*," the Registration Statement provides Eldorado's "unaudited prospective financial information for the years ending December 31, 2019 through 2023 prepared in connection with the negotiation of the Merger Agreement" (the "Eldorado Management Projections").

32.     The Registration Statement, however, fails to disclose the following concerning the Eldorado Management Projections: (1) all line items used to calculate (a) Net Revenue, (b) EBITDAR, and (c) EBITDA; and (2) a reconciliation of all non-GAAP to GAAP metrics.[1]

33.     With respect to the "*Projections Regarding Unlevered Free Cash Flow of [Eldorado] and Caesars*," the Registration Statement provides a "table present[ing] the unlevered free cash flow projections for [Eldorado] and Caesars for calendar years 2019 through 2023."

34.     The Registration Statement, however, fails to disclose: (1) all line items used to calculate the unlevered free cash flow projections for Eldorado and Caesars for calendar years 2019 through 2023; and (2) a reconciliation of all non-GAAP to GAAP metrics.

35.     With respect to "*Certain Caesars Unaudited Prospective Financial Information*," the Registration Statement provides Caesars' "unaudited prospective financial information for the years ending December 31, 2019 through 2023 and reflect the base case scenario, the recession case scenario and the alternative case scenario prepared by management of Caesars" (the "Caesars Projections").

---

[1] Eldorado's prospective financial information is material to Caesars shareholders decision on how to vote their shares in connection with the Proposed Transaction, as Caesars shareholders are being offered Eldorado stock in exchange for their shares and would own approximately 49% of the combined company. Indeed, the Caesars Transaction Committee "discussed the importance of conducting reverse due diligence on [Eldorado] . . . given the stock component[] contained in the[ir] proposal[.]"

36. The Registration Statement, however, fails to disclose the following concerning the Caesars Projections: (1) all line items used to calculate (a) Net Revenue, (b) EBITDAR, (c) EBITDA, and (d) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

37. When a company discloses non-GAAP financial metrics in a Registration Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

38. The disclosure of the aforementioned financial information is material because it would provide Caesars shareholders with a basis to project the future financial performances of Caesars and Eldorado on a stand-alone and combined basis and would allow shareholders to understand the financial analyses performed by PJT in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company.

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Sept. 10, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

Without such information, which is uniquely possessed by Caesars and PJT, Caesars shareholders are unable to assess the fairness of the Proposed Transaction and unable to determine how much weight, if any, to place on PJT's fairness opinion in determining whether to vote for or against the Proposed Transaction.

39. Accordingly, in order to cure the materially misleading nature of Caesars' and Eldorado's projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics, and disclose the line item projections. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

40. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Caesars shareholders.

### 2. Material Omissions Concerning PJT's Financial Analyses

41. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by PJT.

42. The Registration Statement fails to disclose the following concerning PJT's "*Discounted Cash Flow Analysis*": (1) all line items used to calculate "Caesars' estimated after-tax unlevered free cash flows for the calendar years 2020 through 2023 for [each] applicable case" (*i.e*., the base case, recession case, and alternative case); (2) the ranges of terminal values of Caesars as of December 31, 2023; (3) the individual inputs and assumptions underlying the (i) exit multiple range of 8.25x to 9.25x, and (ii) discount rates ranging from 8.75% to 9.25%; (4) Caesars' net debt and minority interests; (5) the value of Caesars' equity ownership in the Baltimore joint venture; and (6) the number of fully diluted shares of Caesars common stock as of December 31, 2019.

43. The Registration Statement fails to disclose the following concerning PJT's "*Discounted Equity Value Analysis*": (1) the implied terminal value for each case (*i.e.*, the base case, recession case, and alternative case) as of December 31, 2022; (2) the expense of stock based compensation ("EBITDA (post-SBC)") for calendar year 2023 for each of the base case, recession case and alternative case; (3) the individual inputs and assumptions underlying the (i) range of terminal value to estimated EBITDA (post-SBC) multiples of 8.25x to 9.25x, and (ii) the discount rate of 13.50%; (4) Caesars' estimated net debt and minority interests; (5) the present value of Caesars' equity ownership in the Baltimore joint venture; and (6) the number of fully diluted shares of Caesars common stock as of December 31, 2022.

44. The Registration Statement fails to disclose the following concerning PJT's "*Selected Precedent Transaction Analysis*": (1) the valuation and financial metrics relating to the selected transactions utilized by PJT in the analysis, including the enterprise values, pricing multiples, and financial metrics for each selected transaction; and (2) the qualitative judgments PJT made concerning the differences between the characteristics of the selected precedent transactions and the Proposed Transaction that would affect the acquisition values of the selected target companies and Caesars.

45. The valuation methods, underlying assumptions, and key inputs used by PJT in rendering its purported fairness opinion must be fairly disclosed to Caesars shareholders. The description of PJT's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Caesars shareholders are unable to fully understand PJT's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on it in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter

the total mix of information available to Caesars shareholders.

### 3. Material Omissions Concerning the Sales Process Leading Up to the Proposed Transaction

46. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

47. The Registration Statement states that, "on March 4, 2019, Caesars executed a non-disclosure agreement with [Eldorado] permitting the exchange of certain non-public information of Caesars." The Registration Statement states that "[t]he non-disclosure agreement entered into with [Eldorado], similar to the subsequent non-disclosure agreements entered into with other bidders, included customary standstill provisions."

48. The Registration Statement, however, fails to disclose whether Caesars entered into any non-disclosure agreement that contained a standstill provision with "don't ask, don't waive" provisions (including their time of enforcement) that would preclude potential buyers and/or parties from making a superior offer for the Company.

49. Without this information, Caesars shareholders may have the mistaken belief that potential acquirers are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Caesars shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

50. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Caesars shareholders.

### 4. Material Omissions Concerning PJT's Potential Conflicts of Interest

51. The Registration Statement omits material information concerning potential

conflicts of interest involving PJT.

52. The Registration Statement fails to disclose the estimated amount of the "discretionary fee [which] may be payable to PJT Partners upon the closing of the [Proposed Transaction]," as well as the circumstances under which PJT will be paid such fees at Caesars' discretion.

53. The Registration Statement fails to disclose the amount of compensation PJT received for the past services it provided to Caesars and its affiliates.

54. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

55. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Caesars shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

51. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

52. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

53. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

54. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with and/or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

59. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 11, 2019 Respectfully submitted,

**HALPER SADEH LLP**

/s/Zachary Halper
Zachary Halper, Esq.
36 Kingston Run
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*